UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ANDREW MILLER,

        Plaintiff,

v.                                                Case No. 2:13-cv-15024

DAVID BALLARD, Warden
and JIM RUBENSTEIN, Commissioner,

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

On June 20, 2013, the plaintiff, an inmate at the Mount Olive Correctional Complex ("MOCC"), filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) and a Complaint under 42 U.S.C. § 1983 (ECF No. 2). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**STANDARD OF REVIEW**

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court further explained its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * * In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50. Because service of process has not occurred, a motion to dismiss has not been filed in this case. However, such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A.

## **THE PLAINTIFF'S ALLEGATIONS**

The plaintiff's Complaint, which is not a model of clarity and is difficult to discern at points, alleges that the plaintiff was found guilty of a prison rules violation for possession of alcohol by Mr. Greenwood (who is not a defendant named in the style of the Complaint). (ECF No. 2 at 4). The plaintiff contends that what he possessed was a bottle of orange juice. (*Id.*) The Complaint further alleges as follows [spelling corrected in part]:

> It tested E-31 what they claim to be an[d] mean to[o] high to be registered. They used an intoxicant meter an[d] not the Alco-Sen[s]or 3 or 4 as outlined in policy directive by the WVDOC. The "Alco-Sen[s]or" reading may go from 0.01 to 100% proof so to say it tested to[o] high to be registered make[s] no sense."

(*Id.* at 4).

The Complaint alleges that defendants Ballard and Rubenstein "denied the facts" when "the proof an[d] truth is there in our face." (*Id.* at 5). The Complaint further alleges that the plaintiff was placed on administrative segregation for 18 months or more and that he is "not allowed to take any classes an[d] show the parole board." (*Id.*) The plaintiff's Complaint does not indicate that he lost any good conduct time as a result of this disciplinary sanction or that the sanction in any way directly affects the duration of his confinement. The plaintiff requests that the court:

> (1) expunge the record from my files; (2) release me back to the general population; (3) suspend the Commissioner and Warden; (4) make both Warden and Commissioner write letters to the parole board why I have no classes an[d] won't be able to make parole; (5) sent to another prison to be moved from this administration revenge; and (6) purchase Alco-Sensor 3 or 4 as by policy.

(*Id.*)

3

## ANALYSIS

Section 1983 of Title 42 of the United States Code provides in pertinent part that:

> Every person who under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not, in and of itself, a source of substantive rights; rather, it merely provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Thus, a plaintiff must allege both a violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011).

Documents filed by *pro se* plaintiffs are held to a less stringent standard than those drafted by attorneys and, therefore, are construed liberally; however, the court may not act as an advocate for the *pro se* plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Weller v. Department of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Although the plaintiff has not alleged the violation of any specific federal constitutional right or law, liberally construing the Complaint, the undersigned believes that the plaintiff is attempting to assert either a due process claim under the Fourteenth Amendment related to his prison discipline and subsequent placement and retention in administrative

4

segregation, or a claim under the Eighth Amendment concerning cruel and unusual punishment.[1] The undersigned will address each type of claim in turn.

### A. Substantive and procedural due process claims.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law." The only interest potentially implicated in this matter would be a liberty interest. However, as a result of his conviction and imprisonment, the plaintiff's protected liberty interests are significantly reduced.

Prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. As noted by the Supreme Court in *Sandin v. Conner*, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner" and "the Due Process Clause did not itself create a liberty interest to be free from intrastate prison transfers." 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. As specifically addressed in *Sandin*, discipline in the form of segregated

---

[1] The undersigned notes that the plaintiff filed another civil action in this court, Case No. 2:13-cv-08573, alleging that his placement in the Quality of Life Program at MOCC violated his right to due process. The Quality of Life program ("QOL program") is a behavior-driven progressive incentive system consisting of five levels. Inmates qualify for advancement to the next level by completing required behavioral and educational programs. All inmates who are placed in administrative segregation are placed on the QOL Program. Thus, to the extent that the instant Complaint is alleging a violation of his right to due process due to his placement in administrative segregation, and the effect thereof on access to educational and rehabilitative programming, such allegations mirror those made in his prior Complaint. The plaintiff's prior civil action was dismissed by the presiding District Judge on initial screening pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted on April 7, 2014.

5

confinement does not constitute the deprivation of a constitutionally-protected liberty interest. *Id.* at 486.

In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit reiterated that, "[i]n order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property" by governmental action. Under the reasoning in *Sandin*, the *Beverati* Court further held that neither the fact that an inmate was placed in administrative segregation, nor the general conditions therein, resulted in confinement that is atypical or posed a significant hardship on the inmate vis-a-vis ordinary prison life, so as to give rise to a liberty interest protected by the Due Process Clause. *Id.* at 502-504.

Following the reasoning of the Supreme Court in *Sandin*, the undersigned finds no liberty interest implicated in the decisions of prison staff which caused the plaintiff to be placed in administrative segregation, as it is not atypical for inmates to be placed in administrative segregation for any number of reasons, and a prisoner has no liberty interest in being housed in any particular prison facility. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Beverati*, 120 F.3d at 502-04 ("confinement to administrative segregation does not implicate a liberty interest").

Likewise, because the plaintiff did not suffer the loss of good conduct time, or any sanction resulting in a direct change in the length or duration of his overall confinement, he cannot establish a liberty interest on that basis in order to assert a cognizable procedural or substantive due process claim. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). "Since Plaintiff was not deprived of a protected liberty interest, this Court need not reach the question of what process was due and if Plaintiff received those due process

6

protections." *Whitfield v. Thompson*, No. 13-22379, 2016 WL 1169253 at \*14-15 (S.D. Fla. Feb. 25, 2016).

If the plaintiff is complaining that the conditions of confinement in administrative segregation are themselves a violation of due process, he has not sufficiently stated a plausible claim on that basis either. While the Supreme Court ruled in *Wilkinson v. Austin*, 545 U.S. 209 (2005), that the "totality of circumstances" to which inmates were subjected in the Ohio "super maximum" prison (prohibition of almost all human contact including cell-to-cell conversation, 24-hour a day lighting, one hour of exercise in a small indoor room, indefinite placement, and disqualification for parole consideration) were atypical and significant hardships which could create a liberty interest and its attendant due process requirements, in *Beverati*, *supra*, the Fourth Circuit held that Maryland inmates in administrative segregation who claimed to be surrounded by vermin, human filth and water from leaking toilets, denied air conditioning, served cold food in meager portions, denied outdoor recreation, and given <u>no</u> educational or religious services, had failed to meet the *Sandin* standard.

> Accepting Inmates' version of the conditions in administrative segregation, as we must for purposes of review of the grant of summary judgment [to defendants], we conclude that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.
>
> In sum, we conclude that viewing the conditions of confinement in administrative segregation that are alleged by Inmates in the light most favorable to them, the conditions do not implicate a liberty interest. And, because they possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims.

500 F.3d at 504.

At most, the plaintiff speculates that his placement in administrative segregation would deny him access to certain programming which <u>might</u> influence the Parole Board's determination of whether he should be released on parole. The plaintiff is not, however, <u>disqualified</u> from parole consideration. Moreover, to the extent that the plaintiff has implied that his lack of "classes" may affect his chances for parole, his Complaint fails to sufficiently state any facts to support such a claim or plausibly show how any conduct by the two named defendants, David Ballard and Commissioner Rubenstein, has resulted in any actual injury to the plaintiff.

The holdings in *Sandin*, *Beverati* and *Wilkinson* establish that the plaintiff has failed to state a facially plausible claim under the Fourteenth Amendment against defendants Ballard and Rubenstein.

### B. Eighth Amendment claim.

To the extent that the Complaint could also be liberally construed to be asserting a violation of the Eighth Amendment's guarantee against cruel and unusual punishment resulting from his placement in long-term administrative segregation, the undersigned proposes that the presiding District Judge **FIND** that the Complaint also fails to state a plausible claim on that basis.

> The Eighth Amendment prohibits punishment inconsistent with "evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble* 497 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed.2d 630 (1958)). Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed.2d 59 (1981).

*Atkinson v. Taylor*, 516 F.3d 257, 272 (3d Cir. 2003).

8

Judicial deference to prison officials, who must maintain order and security, was the focus of the Fourth Circuit in the case styled *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir.), *cert. denied sub nom. Mickle v. Moore*, 528 U.S. 874 (1999) (hereinafter referred to as "*Mickle*"). In *Mickle*, the Fourth Circuit found no Eighth Amendment violations by prison officials who housed "The Five Percenters," an inmate group, confined in their cells twenty-three hours a day without radio or television, with five hours of exercise a week, and without participation in prison work, school, or study programs. Such confinement had continued for more than three years. 174 F.3d at 471-72.

Here, the plaintiff has not sufficiently alleged that any of the conditions of confinement on administrative segregation at MOCC, and in particular, the alleged lack of "classes [to] show the parole board", have deprived or will deprive him of the minimal civilized measure of life's necessities. Consequently, he cannot plausibly show how any conduct by David Ballard and Jim Rubenstein has resulted in a violation under the Eighth Amendment.

## RECOMMENDATION

For the reasons stated herein, and pursuant to the holdings in *Twombly* and *Iqbal*, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 2) under 28 U.S.C. § 1915A, and **DENY** his Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1).

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston,

United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

July 15, 2016

Dwane L. Tinsley
United States Magistrate Judge